Good morning, Your Honor, and may it please the Court. My name is Rochelle Wilcox, and I'm with Davis Wright Tremaine, and I represent the appellants Jennifer Golan and Shane Shifflett. I would like to reserve five minutes if I can, and I will. Just watch the clock, Counselor. I will. Thank you, Your Honor. Not all of your predecessors have been so successful in reserving time. That is true, and I can say I have not often been successful in doing that myself, but we'll see how it goes. The fault is almost always ours. Hi. Jennifer Golan and Shane Shifflett followed the directions that the district court gave them to apply for a waiver of PACER fees as a Section 501c3 nonprofit organization. As they explained in their application, that waiver was necessary for them to do the vital research that they wanted to do, thoroughly and carefully analyzing the efficacy of the court's conflict check system to determine whether the system avoids the court's goals of avoiding, excuse me, meets the court's goals of avoiding conflicts of interest, and to educate the public on their findings. The Center for Investigative Research has existed for 35 years to do just this kind of work. The district court's interpretation of the judicial conference rules has the perverse effect of denying fee waivers to the very organizations that are most likely to conduct the research that the fee waivers are intended to enable. Excuse me, counsel. Could I ask the clerk to start the clock, please? Now you're sure to be able to resume. The court's order defeats transparency, despite this Court's declared commitment to transparency. Counsel, we have a threshold question. Not a surprise to you, I'm sure. This is certainly a case of first impression of the Ninth Circuit, but we do have the question of whether there is a justiciable controversy in front of us. Having to do with the case of In re Baker, do we have jurisdiction is the question? Yes, Your Honor. I'm comfortable that you do. And we deal with this in our reply brief. We think that the case of In re Derrickson is directly on point. That is a fee case under the CJA. And it holds that the court has jurisdiction to address issues in awarding fees under the CJA where the question is the court's interpretation of the CJA and whether or not the district court can do something under that act. But there was in that case a pending case. There was, Your Honor. A pending case other than the application for fees. There was, Your Honor. And we do have the question of whether there is a justiciable controversy  And we do have the question of whether or not there is a justiciable controversy under the CJA. Here, the only issue is access to a system. Why isn't this an administrative order? Well, if the ‑‑ I'll deal with the first part of Your Honor's point first. Russell v. Hugg is also cited in our briefs. And there, it is just parties, the unsuccessful applicants to enter the bar and the court. And so that case and other cases that we have cited in our reply brief make clear that you don't have to have two parties to have a justiciable controversy before the court. You can have a single applicant who is seeking relief from the court and is stymied in that relief in one way or another. Well, I suppose in theory, there ought to be some level of appeal available in which case, if this is purely administrative, why shouldn't the judicial counsel of the circuit be the proper reviewing body instead of an Article III court? We disagree with the question. We disagree with the statement that this is administrative. This is a judicial act because it's an interpretation of the governing rule. And under this court's decisions, including Henry Derrickson, Russell v. Hugg, when the court is deciding what the rule says, whether or not ‑‑ Henry Derrickson, the question was whether or not the district court had jurisdiction to resolve the fee application in the first instance because it was filed too late. There, the court held that it was judicial in nature and could be appealed to this court because it was a question of the court's authority. This court, under the court's precedence, clearly has the jurisdiction to decide whether the district court erred or acted appropriately in interpreting the applicable rule. The difference, of course, with Henry Baker and the other cases is that there the rule to the particular facts of a case to award a fee award. Here, the district court did that initially. It applied the rule, the judicial conference rule, to the facts of the case in the first application and found that the reporters were entitled to the fee waiver. It then, based on its misunderstanding of the rule, decided that the reporters ‑‑ it then revoked that. It noticed a hearing and revoked that. At that hearing, and that's at pages 27 and 28, it said, I'm doing this because I have been told, the guidance I have received is that members of the media may not get the fee waiver. Let me concentrate on that for a second and ask a practical question, and maybe it's not one we can resolve. The administrative office, I hate to call them your opponent, but they're the amicus in this case, now says that's wrong. Reporters are not excluded from eligibility. What are we fighting about here? In other words, if you filed a new application tomorrow, the judge could not turn it down on that basis because we now have guidance from the people in charge that he should not. And based on what happened previously, my guess is he would grant it. So maybe you're all entitled to be here, but I'm trying to figure out why we're doing this. Well, I guess the Court is getting to the question of is this now moot in light of the judicial review? Yeah, it's not always whether it's moot, but I guess it's a question, it's a practical question that I suppose maybe a district judge should be asking rather than the circuit judge. We have a district judge here, maybe, yes. But why don't you just – I mean, everybody now agrees that the basis on which your clients were denied access to PACER was incorrect. The judge may or may not have another basis for doing so. Why don't we just all go back to that judge together, or the three of you, the four of you, and say, Judge, you were wrong. That's not our guidance. We've changed the rule. It's now clear reporters are eligible. Judge their case – judge their application on its merits, which is all you ask for. Why are we here? Because we – because this Court, it's the role of this Court to review orders from the district court. When the court has addressed an issue, as in Henry Derrickson and Russell v. Huck, excuse me, when the court has addressed an issue in interpreting the rule, we do not know. We have not gone back. We understand that this Court – you know, the judicial conference has said what it has said, but that is not binding on the district court until the court reconsiders the application. And that's why we're here.      on the district court until the court reconsiders the application. Direction from this Court will make clear exactly what the judicial conference guidelines say. I don't know whether we can do this, but what if we were to vacate submission of the appeal with, again, give you leave to reapply? Your Honor, I mean, our goal is to – to get these – get this fee waiver. I believe that the most direct way to do that is from a reversal by this Court, which makes clear that, as clarified, the policy now states that members of the media are not categorically exempt. I think that the clarified rule is much more direct. I think it obviously – it obviously is intended to accomplish that purpose, but – But it's still discretionary, is it not? There's a lot of discretion in the way the language is proposed. It is. The judicial conference has granted a lot of discretion to the district courts. And in initially exercising its discretion, the Court found that the reporters were entitled to the fee waiver. And the question was, then, whether it erred when it, in reinterpreting the judicial conference rules and the policy notes, concluded that there is a categorical exclusion for members of the media. See, the reason I raise my question is that, as Judge O'Scanlan's question suggests, we have an issue of somewhat first impression in this circuit on appellant jurisdiction. And that's an interesting issue, and perhaps we have to reach it. But it seems to me sort of spinning our wheels to do so in a case where the district judge has already said, this application is fine, other than the fact that they're reporters, and the administrative office now says, boy, Judge, that shouldn't make a difference to you. So I'm just – it's not your fault. I'm just – I asked the question in trying to get some help from both sides on this. I guess I would say that until that order is reversed, it's not clear to us that we're not bound by something along the lines of law of the case or something else, that we would be entitled to go in and submit a new application. We do have a new set of rules. I think that the judicial conference has clarified the rules. I don't think that it is a rewrite of the rules. I believe that, based on the AO's brief, that they've made clear that they believe the rule before was unclear. It sounds like this was always their intent. And so a clarification without a reversal from this Court may or may not give the – direct the district judge that, yes, you should reconsider your decision that we have appealed. Well, if there's jurisdiction in this case, then somebody that is some sort of an individual researcher associated with educational institutions, and they come, they want to have access to a bunch of things that would normally cost thousands of dollars, and if some chief district judge someplace says, no, you're not bona fide, then that's appealable to whatever circuit court there might be, right? I disagree, Your Honor. I think that there are two different situations here, and I think that the Court's cases, Henry Derrickson, Russell v. Hugg, U.S. v. Ray, and in particular we cite to a footnote in U.S. v. Ray, it's – and I apologize, I don't have the footnote number, but we cite to it in our brief – that specifically distinguishes Derrickson, Baker, and Russell v. Hugg, and talks about the difference between the court – the district court acting in its administrative capacity, which is when it resolves – what it does when it resolves these applications on the merits and applies facts to determine whether or not the applicant is entitled to a fee waiver. That has been granted to the discretion of the court – of the district court. And different from that is the district court's interpretation of the law, an incorrect interpretation of the law. And there's a reason for those to be treated different, because this Court is not – there's not a reason. The judicial conference has decided that the district courts can decide CJA fee waivers. The categorical denial, then, is what you're saying gives us the jurisdiction in this instance? It is the conclusion that the district court has no jurisdiction to grant a fee waiver to members of the media. Correct, Your Honor. It is the conclusion that while it would have granted the fee waiver and actually did once, in looking at it again, the court had been told that it could not do that. And that's why we rely so heavily on Enri Derrickson, because when the court has decided that it doesn't have the discretion to do something, that needs to be fixed so that the court understands the rules that it's operating under. I see I'm down to just over 4 minutes in my expanded time, and I would like to reserve some time for rebuttal, unless the Court has additional questions. No, you may reserve time. Thank you, Your Honor. Yes, you may reserve. We'll hear from the administrative office. Thank you, Your Honor. May it please the Court, I'm Thomas Byron from the Department of Justice. Here on behalf of the Administrative Office of U.S. Courts as amicus curiae, we are grateful to the Court for inviting our participation and would like to explain a little bit of the background, if I may, at the beginning, because there was a comment by appellant's counsel that there's a concern here about transparency and access to information. I think it's important to recognize that there is widespread public access, universal public access, really, to nationwide Federal court dockets and filings that was never available in the past, and that the Judicial Conference has accomplished that remarkable goal purely in a self-funded system, funded by PACER user fees. And originally, before PACER existed, before CMECF existed, the judiciary went to Congress and asked for taxpayer funds to be appropriated for electronic access to this information, and Congress declined to appropriate any taxpayer money and instead directed the courts to create a system that was self-funded by user fees. The Judicial Conference has done this, and it's really a remarkable story. What we have now is a system where, in the past, one would have to go to each individual courthouse and review paper records in order to identify information going on in particular case, virtually any Federal case pending or that has been filed since the onset of the PACER and CMECF systems. That is an abundance of access, a level of transparency, you know, that could not have been foreseen at the time. The fact that one has to pay a modest fee of 10 cents per page with substantial exceptions that mean that no one, that many people, the vast majority of users do not pay anything, in fact. So, for example, there's a 30-page limit, a $3 cap on the most you'll have to pay for any document. Users who generate less than $15 of fees per quarter pay nothing. There's no fee for registration to use the system. There's no fee for electronic filing or for access to information in a particular case by litigants and attorneys. These are extraordinary, it seems to me, and they reflect the importance of the judiciary's policy decision to fund this system through PACER user fees that are generated by the largest users. Now, the policy that we're talking about here now, today, reflects that decision, that policy judgment by the Judicial Conference in which we have in front of us at the moment, and I appreciate the background, that's very helpful, is who resolves disputes? A district judge will deny an application in a certain case, and if it is considered administrative, then there's nothing that can be brought in front of an Article III court. What is it that would make this judicial, as your opposing counsel would suggest? Justice Kagan, I think you've highlighted the justiciability concern that we raised in our briefing, and that is when a judge or a clerk, and after all, in some districts, the clerk has the authority to rule or to act on these kinds of applications for exemptions. When a judicial officer makes a decision like this about a policy, about the court's access, for example, what time the courthouse doors will open or those sorts of things, that is an administrative policy determination. It's not a judicial. To whom does an aggrieved party then seek review? Well, Judge Horowitz, I would say, first of all, if the concern is with the policy itself, in other words, you want to come in the door at 815 instead of 815. No, but let's not. Let's use this policy. Let's use the facts of this case. We all agree, because you filed a very nice brief, that if the district judge thought he had no power to grant an exemption to reporters, he was mistaken. Well, first of all, I don't read the order below as reflecting that. I think it's ambiguous at best. But if he thought that, then he was mistaken. Right. In fact, as we explained, and as the clarified policy makes clear, it's a presumption, a categorical presumption, not a categorical grant or prohibition. Okay. So and let's assume, just for purposes of discussion, that this district judge was mistaken. Right. He thought, originally thought I can grant this exemption from PACER, but now I think the AO has prevented me from doing so because I misread its policies. And we now have two reporters or two applicants who think that under a correct standard, the judge might well have granted their application. And, indeed, they've got some evidence of that since the judge did before he changed  So they think the judge made a wrong decision. To whom do they seek review? From whom do they seek review of that decision? Judge Horwitz, I would say if they think they should be granted, they should file a new application. As we explained here. But what if the judge says, I already told you you were wrong? Well, first of all, I think there's very little risk of that here, as the Court's questions to Appellant's counsel made clear. The policy has been clarified. Of course, we think it was clarified because the original intent was likewise to reflect. So is this case moot? Is that what you're saying? No, Your Honor. I don't think it is moot, because I don't think there's anything. Then I would suggest you answer Judge Horwitz's question. Right. To whom does one go for relief? If one's being denied the access, at least the free access, it could very well be that these folks are interested in 20,000 pages of records, in which case there would be a very, very substantial fee. There may, Judge O'Scanlan, if I may, first I'd like to answer the question and then address that issue about cost and ability to pay, because that's what the policy turns on. So turning first, Judge Horwitz, to your question, to whom do they go? If they think the policy No, they think the policy is terrific. They love your policy. Your policy is beneficial. It gives the judge enormous discretion. It doesn't prevent the judge from granting exemption to reporters. They think you've got a peachy policy. But the judges turn them down. Who should they go to? They should go to the Judicial Conference, Your Honor. The Judicial Conference sets this policy as an administrative matter, and it is incredibly receptive. Well, here's my problem, and I thought you would say the Judicial Conference. The Judicial Conference doesn't decide individual cases. That's right. It makes policy. Exactly right, Your Honor. So let's assume we have, and we don't have one here, an obstinate district judge. They exist somewhere out in the hinterlands. And the district judge says, I don't care about that policy. I'm just never letting you guys inside this system. And we all think he or she has abused his or her discretion. The Judicial Council is not going to say that. The Judicial Council is just going to say, no, the rules are X, Y, or Z. Right. Is there no place where these poor reporters can go for justice? Just a minute. I sat on the Judicial Conference from the Eighth Circuit. And, I mean, there are weighty things that come before them, not that this isn't important, but frankly, I can't imagine this being an agenda item for the Judicial Conference every time that this might come up. Well, Judge Pearsall, I appreciate your experience, and I think it reflects the significance of the policy determinations that the Judicial Conference does make. But you're right. It would not consider case-specific concerns, right? But what it would consider is if there are uncertainties or confusion out there among district judges or some district judges, it would clarify the policy and make clear what it is. I think as your question reflects, Judge Horwitz, there really are not going to be district judges out there who just say, I don't care about the policy. I'm not going to apply it. That's not likely to happen. But let me also say — But what about a genuine difference of opinion? The district judge interprets the policy a certain way. Folks back in Washington, D.C. and the AO interpret it a different way. Who will tell the district judge that he made a mistake? Judges, I think that the answer to that is that the AO, on behalf of the Judicial Conference, works cooperatively with district courts, with judges who are considering applications. There's a long history of that. It happens. And there's not really a sort of superior officer kind of role to be played here. This is a grant of enormous discretion to district judges. That's clear. So is the real answer to my question nobody? I think with respect to a case-specific concern, that's right. And there's nothing wrong with that. Now, what about the Judicial Council of the circuit? Now, that body has considerable powers with respect to courts within the circuit. Yes, Your Honor. It's possible. It's hard to imagine the Judicial Council likewise considering the kind of case-specific concerns. Possible. And if there were, for example, serious allegations of judicial misconduct, I think there's a basis for remedies for those kinds of complaints. We wouldn't suggest, I think, that there's anything here or in any conceivable case rising to that level. But I guess I would leave to another day whether that's possible. I don't think the applicants here argue that they have what the court in the Supreme Court in Feldman, the court in the Seventh Circuit Court in Bensee made clear was a present right to an exception. And that's, I think, the real distinction between the cases they rely on and the normal run of cases. So the discretionary element here is really quite important. The idea that you're not entitled, even if you're a 501c3, even if you're indigent, in fact, you're not entitled to a fee exemption. What you're entitled to do is apply for a discretionary exemption. So let me go back to the practicalities of the case. I don't know how we achieve them. But we have one side saying the district judge, we think, thought we were ineligible and that's wrong. And we have you as amicus saying, well, we're not sure he thought that, but that's not the law, that's not our policy, and they're not ineligible. I'm trying to figure out a way to get the three of you in front of the district judge again so that you can make clear to the judge that's not what the policy requires. And so tell me how I do that. Let me be clear about one thing. You said one side. There really is only one side. I understand. That's what's so troubling about this case. There's only one side. You both seem to agree. Right. And we're fighting here about whether or not we have appellate jurisdiction to order a district judge to do what the two of you together would go to the judge and say he has the power to do. So tell me how we achieve that. The applicants have always been able to refile an application that satisfies the standard. We made clear, and let me take this back to Judge O'Skillen's question earlier about costs and inability to pay, which is what's reflected in this policy in the first place. We made clear in our brief their application did not satisfy that requirement. They did not demonstrate an inability to pay or a burden that would satisfy what's called for in the policy for a fee exemption. So if they wanted to file an application that would address those concerns, how many they didn't make that demonstration either in their claim of that they wouldn't be able to pay. They didn't actually show how much they had. But do you read the record as suggesting that the judge denied their application on any of those grounds? I think, Your Honor, that the entire record, including the transcript of the hearing, is ambiguous at best, but does reflect recognition that the court should not, I think as the transcript says, I think it's at record 29 or 30, that the judge should not grant exemptions to members of the media. But not that it could not. So what do we do in this case, the case that you're arguing right now? What's the role of our court in this case? None, Judge O'Skillen. This court should dismiss the appeal. But we have to either affirm or reverse. No, Your Honor. You should dismiss the appeal for lack of justification. Or dismiss. Yes, that's correct. Dismiss on the basis of what? Lack of jurisdiction. Lack of appellate jurisdiction, Your Honor, as we argued. What about the district judge? Did the district judge have jurisdiction to rule the way he did? No, because there's nothing jurisdictional about it. It's just an application. It's administrative to decide are you going to get this application, are you going to grant this application or not. But that's not a jurisdictional question. That's just the administrative action of a judicial officer acting in an administrative capacity. Your opposing counsel is going to come back and she's going to tell us that this is not administrative. There is a legal interpretation that was made which is subject to judicial review. What's your response? I think that's incorrect, Your Honor. First of all, it wouldn't matter in the sense that it's an administrative, not a judicial act. It wouldn't matter if there were sort of a mistaken understanding about the nature of the policy or something. And after all, that's been clarified and they've had the opportunity, continue to have the opportunity to go back. And after all, there's a new chief judge in the northern district. They could go before Chief Judge Welkin and make their showing. There's no suggestion they'd be bound by law of the case or anything else. That mistakes sort of the fundamental understanding about judicial roles versus administrative roles, and that, we think, is at bottom, why this Court lacks appellate jurisdiction, why there was no need for jurisdiction in the district court, and why the appeal should be dismissed. Now unusual about this, I mean, really, the chief district judge makes a significant number of decisions that are not judicial acts. Yes. I think that's right, Your Honor. And my sort of flip example about when the courthouse doors open is just one of many. People may have concerns about the copying costs. I see my time has expired if I continue to answer the question. People who still want paper copies of things may have concerns about the cost to make copies. Those are the kinds of things that this Court does not routinely consider. They are the kinds of things that are administrative in nature and not subject to questions of law or judicial review. And I appreciate the opportunity to address the Court. Thank you, counsel. If you have further questions. Thank you. Ms. Wilcox, you have some reserve time. Thank you, Your Honor. I'll respond first to the jurisdictional point and the question of administrative versus judicial. And I will, again, point the Court to Derrickson, which I know I've gone on and on about, so I apologize about that. And the point that the CJA cases, In re Baker and the other cases cited, are not reviewable by this Court because they are administrative. And yet Derrickson, a CJA case, was held to be reviewable. And this Court has twice affirmed and repeated that analysis, repeated the holding of that case, because it was an incorrect interpretation of the controlling authority. And so Let's take this. CJA case is one thing with regard to fees and so on, where you have an actual case before you. Let's say, on the other hand, as a chief judge, I say that person isn't qualified to be a CJA lawyer. And I'm not going to put them on the CJA panel. Is that appealable up here? It would depend on the rationale for the Court's decision. Russell v. Hugg distinguishes between applying the law to a case based on the facts and interpreting the law, the constitutionality of a provision. Here we have raised an argument about whether or not treating the media differently would be constitutional. And I think it's clear it would not be. And so in Russell v. Hugg, they considered some of the issues, and they refused to consider one because it would have required an application of the rule to the facts of the case. And so ---- Was that a matter of appellate jurisdiction? I mean, here's the ---- you're claiming jurisdiction under 1291, I take it. It was, indeed, a matter of appellate jurisdiction. Okay. So why is it why is a dispute not a final order of the district court if it involves discretion, but a final order of the district court if it involves legal interpretation? And that is ---- that is hard to follow in the cases. I'm not making it difficult to follow. It is hard to follow in the cases. But what it comes down to is respecting the fact that some decisions are administrative in nature, and there is no ---- there is no mechanism. The statute does not allow for judicial review. So if the judge had given you no reason here, if the judge had just simply said they lied? We would have had a harder case. This appeal turns on the court's conclusion. And I would disagree with the AO. I think it's clear from the record, and I would cite the court to 28 and 29, 23, and 11 to 13 of the record, where the court made clear that it was withdrawing the fee waiver because it found that the reporters were members of the media and were therefore categorically prevented from getting a fee waiver. Our case really turns on the fact that the court reached that categorical exclusion. It interpreted ---- it concluded that it had no authority under the controlling rule to grant that exemption. And that is really the difference, and it's reflected in the cases. Counsel, if the fee waiver in the end is ultimately denied, what would the ---- what's your forecast in terms of what the actual fees would be for the records that you're seeking? Your Honor, that is not in the record. They wanted to look at every single case in the Northern District. They ---- it is also not in the record, but they submitted applications across California that were rejected. We assume because they are members of the media, but in those cases, the courts did not ---- did not give their reason. It ---- you know, they ---- But you would not come within the ---- is it a $15 limit that ---- No, Your Honor. They wanted to look at every single civil case within the Northern District, which ---- Which would be hundreds if not thousands of dollars in fees. Certainly, thousands of dollars in fees.  I do not know that ---- the answer to that, Your Honor. Probably back when CMECF started. I don't know the answer to that, Your Honor. I would assume so. I mean, the goal, and it was certainly an important goal, was to evaluate the court's conflict system. It's one that needed to be made. I want to make one more. Counsel, I'm sorry, but your time has expired. Thank you very much for your oral argument. The case just argued will be submitted for decision, and the court will adjourn. Before adjournment, the court is delighted to have the presence of students from the San Francisco City Attorney's Office, law students and externs from the Federal District Court in San Francisco and Oakland, and also law students from the University of Santa Clara Law School. We will be delighted to meet with you after conference. We're going to retire for conference now, and when we're concluded with our conference, we will come back out to meet with you. Thank you very much. Court will adjourn. All rise.
judges: Piersol, O'scannlain, Hurwitz